**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

March 19, 2021

Jason F. Orlando, Esq.
Murphy Orlando LLC
30 Montgomery Street, 11th Floor
Jersey City, New Jersey 07302
*Counsel for Defendant*

Vijay Dewan, Esq.
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
*Counsel for the United States of America*

### LETTER OPINION FILED WITH THE CLERK OF THE COURT

**Re:** *United States v. Travis Thomas*
**Criminal Action No. 16-00324 (SDW)**

Counsel:

Before this Court is Defendant Travis Thomas's ("Defendant") Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (D.E. 99, 104.) This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendant's motion.

### DISCUSSION

**A.**

Although a district court generally has limited authority to modify a federally imposed sentence once it commences, *see Dillon v. United States*, 560 U.S. 817, 825 (2010); *United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020), the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion

> on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c). Accordingly, under the FSA, "a defendant seeking a [statutorily authorized modification] in his term of imprisonment bears the burden of establishing both that he has satisfied 1) the procedural prerequisites for judicial review, and 2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2. First, "a defendant seeking a reduced sentence must ask the BOP to do so on his or her behalf," and either "wait thirty days for the BOP to respond" or "exhaust all available administrative appeals after receiving an adverse decision." *United States v. McDonald*, Crim. No. 09-556, 2020 WL 3638280, at *3 (D.N.J. July 2, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). Then, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission,[1] and (3) the applicable sentencing factors under § 3553(a) [("Section 3553")] warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (citation omitted).

**B.**

On July 14, 2017, Defendant pleaded guilty to an eight-count indictment charging him with distributing and possessing heroin in violation of federal law. (D.E. 107 at 2); 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)–(C), 846. On November 15, 2017, this Court sentenced Defendant to 210 months of imprisonment and eight years of supervised release. (D.E. 107 at 2.) Defendant is currently serving his sentence at the Federal Correctional Institution, Schuylkill ("FCI Schuylkill") in Minersville, Pennsylvania. (D.E. 104 at 1.)

On August 7, 2020, Defendant filed a request to the BOP for compassionate release. (D.E. 104 at 5.) The BOP denied Defendant's request on August 28, 2020. (*Id.*; D.E. 99 at 3–4.) On September 15, 2020, Defendant filed a *pro se* Motion for Compassionate Release (D.E. 99), and on January 11, 2021, Defendant filed a counseled supplement in support of his motion. (D.E. 104.)

Defendant asserts that he suffers from obesity and high-blood pressure, which make him vulnerable to severe COVID-19 complications. (D.E. 104 at 2–3, 8; *see also* D.E. 110 at 3.) On

---

[1] The Sentencing Commission's relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A).

this basis, he requests that this Court transfer him to home confinement. (D.E. 104.) Defendant also describes the ongoing virus outbreak at FCI Schuylkill. (D.E. 104 at 10–11 (noting that as of December 18, 2020, there were "162 active cases" at FCI Schuylkill and arguing that Defendant has suffered from isolation and lack of support under lockdown).) Finally, Defendant avers that the enumerated purposes of punishment weigh in favor of modifying his sentence, in part because he has already served five years in prison. (*Id.* at 17.)

The Government concedes that Defendant's obesity may qualify as an extraordinary and compelling reason to justify his release but asserts that the Section 3553(a) factors are dispositive and weigh against adjusting Defendant's sentence. (D.E. 107 at 1, 7–10.) On February 23, 2021, this Court received an additional letter written by Defendant, in which he asserts that he recently contracted COVID-19 and has since been denied medical care. (D.E. 111.) On February 26, 2021, defense counsel filed a reply brief which does not reference Defendant's COVID-19 diagnosis. (D.E. 110.)

### C.

As this Court has noted repeatedly, it lacks the authority to order the BOP to transfer Defendant to home confinement. *See, e.g.*, *United States v. Calabretta*, Crim. No. 12-131, 2020 WL 6055441, at *4 (D.N.J. Oct. 14, 2020) (stating that the court "simply has no jurisdiction" to grant defendant's request "to serve the remainder of his sentence in home confinement"); *see also Aigebakaen v. Warden*, Civ. No. 20-5732, 2020 WL 6883438, at *4 (D.N.J. Nov. 24, 2020) ("Pre-release placement decisions, such as transfers to home confinement, are committed to the BOP's sole discretion."); *United States v. Pawlowski*, Crim. No. 17-390-1, 2020 WL 2526523, at *4 (E.D. Pa. May 18, 2020) (noting that "[b]y its terms, [the FSA] authorizes a court only to '*reduce* the term of imprisonment'" and "'says nothing about temporary release or other such exotic possibilities'"). To the extent that Defendant alternatively requests: (1) a recommendation suggesting that the BOP transfer Defendant to home confinement; (2) a temporary transfer to home-confinement for the pendency of the pandemic; or (3) early release, potentially coupled with a condition of home confinement, this Court declines to grant these requests for the reasons that follow. (D.E. 110 at 2; D.E. 111.)

Standing alone, high blood pressure and obesity do not normally amount to compelling reasons to justify early release.[2] *See, e.g.*, *United States v. Bell*, Crim. No. 15-603, 2021 WL 303009, at *1, *3 (D.N.J. Jan. 29, 2021) (denying motion for compassionate release despite defendant's body mass index ("BMI") of 37.7); *United States v. Atiba*, Crim. No. 14-699-08, 2021 WL 238232, at *3–4 (D.N.J. Jan. 25, 2021) (denying motion for compassionate release where defendant had a BMI in excess of 30, hypertension, and type II diabetes). According to the Centers for Disease Control and Prevention ("CDC"), it is not clear that high blood pressure places Defendant at a higher risk for severe COVID-19. *See* CDC (Mar. 15, 2021 at 10:00 A.M.), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. As for Defendant's obesity, the Government concedes that this condition, if medically supported by the record, "may be considered an extraordinary and compelling" reason for release. (D.E. 107 at 1, 7 ("[A]lthough the defendant has at least one co-morbidity factor that places him

---

[2] Defendant also references mental health concerns. (*See* D.E. 104; *id.*, Ex. B.) Given their cursory treatment in the briefing, these mental health concerns fail to overcome the Section 3553(a) factors, which counsel against early release.

at greater risk … the 3553 factors warrant denial."), 8.) The Government also fails to argue that the BOP's preventative measures have reduced the Defendant's individual risk at FCI Schuylkill. (*See generally id.*) Therefore, in this particular case, given the Government's seeming concession on this point, the current conditions at FCI Schuylkill, which include the active spread of COVID-19, Defendant's vulnerability due to his obesity, and Defendant's assertions regarding his positive COVID-19 test, this Court will accept that these circumstances may amount to a "compelling" reason justifying release.[3]

Nevertheless, the applicable Section 3553(a) factors weigh strongly against Defendant's release. *See United States v. Rivers*, Crim. No. 17-539, 2021 WL 168516, at *1, *3–4 (D.N.J. Jan. 19, 2021) (determining that, although defendant's obesity and additional health issues presented compelling reasons for release, the sentencing factors weighed against granting his motion). This Court must ensure that, should Defendant's sentence be reduced, the reduced sentence still "reflect[s] the seriousness of the offense" and "promote[s] respect for the law." 18 U.S.C. § 3553(a)(2)(A). Here, Defendant's crimes were extraordinarily serious. (*See* D.E. 107.) Defendant was not convicted for low-level, non-violent drug dealing. Rather, Defendant was an integral member of a heroin trafficking organization and led many gang-related operations. (*Id.* at 9.) Further, while in custody prior to his guilty plea, Defendant attempted to prevent a government witness from testifying against him. (*Id.*) Defendant's lengthy criminal history, which involves, *inter alia*, robbery, drug trafficking, assault, possession of a machine gun, resisting arrest, and possession of a cell phone while incarcerated, also weighs against release. (*Id.* at 9–10.)

Given Defendant's history, this Court imposed a significant sentence to promote respect for the law and to signal a message of deterrence. 18 U.S.C. § 3553(a); (*see* D.E. 107 at 10.) Altering that sentence would not "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," or "afford adequate deterrence." 18 U.S.C. § 3553(a). Further, Defendant has served less than one-third of his sentence and releasing him now would create an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); *see Kimbrough v. United States*, 552 U.S. 85, 107 (2007) (noting that "uniformity remains an important goal of sentencing").

In sum, this Court finds that the Section 3553(a) factors are dispositive in this case. As

---

[3] The allegations regarding Defendant's positive COVID-19 diagnosis are not referenced in the briefing, and thus this Court is unable to appropriately assess them. (*See* D.E. 111.) If circumstances have changed, Defendant retains the right to refile. (*Compare* D.E. 104 *and* D.E. 110, *with* D.E. 111 at 4.)

Nonetheless, this Court is deeply troubled by Defendant's allegations that his requests for medical care have gone unheeded. (D.E. 110; D.E. 111.) "[T]o the extent that Defendant's [letter] challenges the conditions of his confinement in [FCI Schuylkill], including his allegations that he has been subject to deficient medical treatment, this Court does not have jurisdiction to consider such claims" at this juncture. *United States v. Kiger*, Crim. No. 08-14, 2012 WL 1132510, at *1 (W.D. Pa. Apr. 4, 2012). Pursuant to a motion for compassionate release, this Court may, however, consider whether Defendant must be transferred in order to receive necessary medical care. *See* 18 U.S.C. § 3553(a)(2)(D). It is this Court's understanding that FCI Schuylkill should be equipped to examine Defendant, determine whether he has become infected with COVID-19, and, if so, immediately provide him with any necessary medications. Therefore, this Court will remind the BOP that it must ensure FCI Schuylkill is fulfilling its responsibilities to Defendant, which include providing him with adequate care, particularly given his health vulnerabilities.

these factors do not support a reduction in Defendant's sentence, his motion must be denied.

## **CONCLUSION**

      For the foregoing reasons, Defendant's Motion for Compassionate Release is **DENIED**. An appropriate order follows.

                                          /s/ Susan D. Wigenton
                                  **SUSAN D. WIGENTON, U.S.D.J.**

Orig:    Clerk
cc:      Parties